CITY OF DURHAM, Plaintiff-Appellee v. SAFETY NATIONAL CASUALTY CORPORA-
TION and UNITED STATES FIRE INSURANCE COMPANY, Defendants-
Appellants

No. COA08-1149

(Filed 5 May 2009)

**Workers' Compensation— excess loss coverage—date of
disability**

The trial court did not err by granting summary judgment for
plaintiff in a declaratory judgment action to determine which of
two insurance carriers was liable for excess loss coverage on a
workers' compensation claim by a police officer suffering from
occupational stress. Although the officer had taken an earlier
leave of absence, the plain terms of defendant's policy allow the
date of the occurrence of the occupational disease to be estab-
lished by the Workers' Compensation Laws, and the Commission
ordered plaintiff to pay disability benefits beginning on a date
within the period of this defendant's policy. Moreover, even if the
Commission's award established the date of disability as begin-
ning with the leave of absence, when defendant's policy was not
in effect, the trial court correctly applied the doctrine of last inju-
rious exposure in finding defendant liable because the officer
returned to work and continued to be exposed to the hazards of
her occupational disease.

Appeal by Safety National Casualty Corporation (Defendant)
from judgments entered 11 February 2008 and 7 July 2008 by Judge A.
Leon Stanback, Jr. in Superior Court, Durham County. Heard in the
Court of Appeals 8 April 2009.

*Kennon, Craver, Belo, Craig & McKee, PLLC, by Joel M. Craig
and Henry W. Sappenfield, for Plaintiff-Appellee.*

*Robinson & Lawing, L.L.P., by Jane C. Jackson and W. Mark
Peck, for Defendant-Appellant.*

McGEE, Judge.

The City of Durham (Plaintiff) filed an action for declaratory
judgment and monetary relief against Defendant and United States
Fire Insurance Company (USFIC) on 20 October 2006. The purpose of
the action was to determine which of Defendant's insurance carriers
was liable to Plaintiff for excess loss coverage on a workers' com-

pensation claim made by Margie Pulley (Pulley), a former police officer with the City of Durham.

Defendant and USFIC filed cross-motions for summary judgment in November 2007. In an order entered 11 February 2008, the trial court granted USFIC's motion for summary judgment. It further denied Defendant's summary judgment motion and granted Plaintiff summary judgment against Defendant on the issue of liability under its policy for excess loss coverage. Plaintiff filed a motion for summary judgment seeking entry of a money judgment against Defendant on 6 May 2008. In an order entered 7 July 2008, the trial court granted Plaintiff's motion for summary judgment. Defendant appeals.

The relevant facts underlying Pulley's workers' compensation claim are as follows: Pulley began working for Plaintiff in November 1975. At that time, Pulley was the only female public safety officer employed by Plaintiff. While working in the Youth Division from 1980 to 1984, Pulley was repeatedly exposed to traumatic situations, particularly crimes involving child sexual abuse. Pulley began mental health treatment in July 1984 for psychological difficulties she was experiencing as a result of her employment. Pulley took a three-month medical leave of absence from work as recommended by her psychologist in August 1984. Pulley was transferred to the Records Division in 1986 and was promoted to acting lieutenant for a brief period in 1987. Pulley transferred to the Warrants Division in 1987 and to the Traffic Division in 1988. Pulley took another medical leave of absence in April 1989. When Pulley's medical leave expired, she was not able to return to work. Pulley's application for disability retirement was approved in October 1989. Plaintiff filed an employer's report of injury with the North Carolina Industrial Commission (the Commission) on 13 April 1989. The Commission entered an opinion and award granting Pulley temporary total disability compensation benefits beginning 30 April 1989.

Defendant argues the trial court erred in failing to grant summary judgment to Defendant. Defendant contends the trial court misapplied the circumstances of Pulley's underlying workers' compensation claim to the express terms of Defendant's insurance policy and incorrectly applied the doctrine of last injurious exposure.

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a mat-

ter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007). We review an order allowing summary judgment *de novo*. *McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006) (citing *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004)).

Plaintiff had excess workers' compensation insurance from 1 August 1986 through 1 September 1993 through a policy issued by Defendant. Defendant's policy provided coverage for loss incurred by Plaintiff above a specified retention level, if the loss resulted from an "occurrence." Defendant's policy defined "occurrence" as: "Occupational disease sustained by each Employee shall be deemed to . . . tak[e] place upon the date the Employee ceases work as a result of such disease or upon the date established by the Workers' Compensation or Employers' Liability Laws of the appropriate jurisdiction."

Defendant argues the word "ceases" should be interpreted to include a temporary suspension from employment. Plaintiff argues "ceases" should be interpreted only to a permanent termination of employment. However, we need not choose between the two interpretations of "ceases" because the plain terms of the policy include "the date established by the Workers' Compensation . . . Laws" as an alternative method for determining the date of the occurrence of Pulley's occupational disease.

The Commission's opinion and award ordered Plaintiff to pay weekly temporary total disability benefits to Pulley beginning 30 April 1989. This date, established by the Commission under North Carolina's Workers' Compensation Laws, fell within the period Defendant provided excess insurance coverage to Plaintiff. Therefore, by the plain terms of Defendant's policy, Defendant is liable to Plaintiff.

However, Defendant argues we should consider the reason why the Commission established the date of disability as 30 April 1989. Defendant contends the only reason the Commission did not order benefits to be paid to Pulley for the period between 8 July 1984 and 14 October 1984 was because Plaintiff and Pulley stipulated that Pulley had previously received payment for that time period. Defendant argues that the Commission's decision read as a whole establishes Pulley's date of disability as 8 July 1984, outside the period Defendant provided insurance coverage to Plaintiff.

However, even if the Commission's opinion and award established Pulley's date of disability as 8 July 1984, we hold the trial court correctly applied the doctrine of last injurious exposure (the doctrine) in finding Defendant liable to Plaintiff. The doctrine is defined in N.C. Gen. Stat. § 97-57 as:

> In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable.

N.C. Gen. Stat. § 97-57 (2007).

Defendant argues the trial court misapplied the doctrine. Defendant contends the doctrine should be applied by determining the date of disability and then looking backward in time to determine liability. However, Defendant cites no North Carolina case law to support its interpretation of the doctrine.

The purpose of the doctrine is "to eliminate the need for complex and expensive litigation of the issue of relative contribution by each of several employments to a plaintiff's occupational disease." *Frady v. Groves Thread*, 56 N.C. App. 61, 64, 286 S.E.2d 844, 846 (1982), *aff'd per curiam*, 312 N.C. 316, 321 S.E.2d 835 (1984). Our Court held in *Caulder v. Waverly Mills* that a "plaintiff need only show (1) that he has a compensable occupational disease and (2) that he was last injuriously exposed to the hazards of such disease while in [the] defendant's employment." *Caulder v. Waverly Mills*, 67 N.C. App. 739, 741, 314 S.E.2d 4, 5 (1984), *aff'd*, 314 N.C. 70, 331 S.E.2d 646 (1985). Our Supreme Court interpreted the phrase "last injuriously exposed" to mean " 'an exposure which proximately augmented the disease to any extent, however slight.' " *Rutledge v. Tultex Corp.*, 308 N.C. 85, 89, 301 S.E.2d 359, 362-63 (1983) (quoting *Haynes v. Feldspar Producing Co.*, 222 N.C. 163, 166, 22 S.E.2d 275, 277 (1942)).

In the present case, Pulley's mental health began deteriorating in 1984 due to her employment stress. However, her employment stress did not cause her to be permanently unable to work at that time. Pulley continued working for Plaintiff and continued experiencing work-related stress for five years, until April 1989. Pulley's condition worsened after she transferred out of the Youth Division in 1986. Pulley was "under significant pressure" and had "numerous outbursts" while working in the Records Division in 1986. Pulley was

transferred to the Warrants Division in July 1987. Working in the Warrants Division "caused [Pulley] so much stress that [she] found it increasingly difficult to concentrate." While working in the Traffic Division from May 1988 until April 1989, Pulley became "more frustrated and angry" and "[i]t got to the point where, emotionally, [she] could no longer handle dealing with the public." Pulley stated: "The stress I was under due to my work environment finally got so bad that, in April 1989, I was no longer able to work in any capacity."

Pulley continued to be "exposed to the hazards" of her occupational disease throughout her employment with Plaintiff until April 1989 when she was unable to continue working in any capacity. Therefore, because Defendant provided excess insurance coverage to Plaintiff in April 1989, we find the trial court correctly applied the doctrine in holding Defendant liable to Plaintiff. We affirm the trial court's granting of summary judgment in favor of Plaintiff.

Affirmed.

Judges HUNTER and BEASLEY concur.