OPAL L. CARROLL v. BURLINGTON INDUSTRIES AND LIBERTY MUTUAL INSURANCE COMPANY AND AMERICAN MOTORISTS INSURANCE COMPANY

No. 8510IC1346

(Filed 17 June 1986)

1. **Master and Servant § 96— Industrial Commission's findings—findings supported by evidence—court on appeal bound**

     If there is any evidence of substance in the record to support the Industrial Commission's findings, the court on appeal is bound by those findings, even though the record may contain evidence supporting findings contra.

2. **Master and Servant § 68— workers' compensation—finding of no byssinosis—finding supported by evidence**

     There was some competent evidence to support the finding of the Industrial Commission that plaintiff employee did not suffer from byssinosis where a doctor who had examined plaintiff on three occasions both before and after the end of her employment testified positively that plaintiff suffered from asthma with only a possibility of byssinosis and that she had suffered no permanent impairment consistent with byssinosis.

3. **Master and Servant § 68— workers' compensation—byssinosis—objectionable evidence—similar evidence introduced by plaintiff**

     Plaintiff who claimed disability from byssinosis could not complain that the Industrial Commission erred in admitting into evidence pulmonary function tests conducted by plaintiff's last employer, since plaintiff's own exhibit introduced by her contained the results of the same tests.

4. **Master and Servant § 68— workers' compensation—byssinosis—Industrial Commission's findings proper**

     There was no merit to plaintiff's contention in a workers' compensation case that the Industrial Commission erroneously "discounted" a doctor's favorable testimony by failing to make detailed findings relative to it, since the Commission's majority expressly considered that the deputy commissioner had had conflicting medical evidence before her; with the entire record before it, the Commission concluded that she had correctly weighed the evidence; the Commission had authority to and did give another physician's testimony

greater weight; and failure to make findings summarizing the first doctor's testimony was not prejudicial.

Judge WELLS dissenting.

APPEAL by plaintiff from Opinion and Award of the North Carolina Industrial Commission filed 8 July 1985. Heard in the Court of Appeals 7 May 1986.

Plaintiff appeals the decision of the Industrial Commission, adopting the Opinion and Award of Deputy Commissioner Dianne C. Sellers which denied plaintiff's claim for compensation for occupational disease, byssinosis. The evidence presented at hearing in September 1983 was as follows:

Plaintiff was born in 1923 and worked in textile mills for approximately 40 years. She worked the last 17 years for defendant Burlington Industries ("Burlington"). When Burlington's Phoenix plant closed in March 1982, she collected unemployment for a year, but was unable to find new employment. She is now retired. Plaintiff had some limited history of smoking but had no breathing problems before going to work in the mills. The mills processed cotton and cotton blends.

Plaintiff worked in plants with varying levels of dust. The Phoenix mill was the last mill she worked in, and it, like the others, was dusty and linty. Plaintiff wore a mask at various times in her last few years of work. She first noticed breathing problems in the early 1970's, and now suffers shortness of breath whenever she exerts herself physically. She stated, "I get short-winded and I give out when I do the least little thing."

Two medical experts testified. Dr. Owens testified that he had examined plaintiff in October 1982. Based on his examination and plaintiff's work record, he formed an opinion that plaintiff had chronic obstructive lung disease, probably due to byssinosis. On cross examination, Dr. Owens was asked about the results of pulmonary function tests (PFT's) conducted by Burlington since 1971. Dr. Owens declined to state what weight should be given to the test results, although he did admit that there was at least one "good curve" (apparently meaning "reliable test") for each year group. Dr. Owens did not testify that he detected or diagnosed any asthma.

Dr. Harris testified, having examined plaintiff in 1981, 1982 and 1983. He testified that plaintiff demonstrated a pattern of "marked reversibility" (meaning that her shortness of breath was treatable), not found in individuals with byssinosis. Dr. Harris testified that the data indicating reversibility were "classic" for asthma. A typical patient with byssinosis, on the other hand, would show a steady, permanent decrease in function over time.

Dr. Harris admitted that asthma and byssinosis were symptomatically difficult to distinguish, and that with plaintiff's history he "would not be surprised" if she had byssinosis. However, as he had in 1981, Dr. Harris diagnosed plaintiff's condition as asthma with the possibility of byssinosis. Dr. Harris relied in part on the PFT data supplied by Burlington. In his opinion, plaintiff showed no permanent lung damage or decrease in function consistent with byssinosis.

On cross examination, Dr. Harris testified that an asthmatic worker would probably suffer an exacerbation of the asthma from working in a dusty environment just as plaintiff had. However, he found that plaintiff's symptoms were "acute" (temporary), and that the extent of any occupational exacerbation of plaintiff's asthmatic condition would be difficult to measure since she did not have much permanent impairment.

Based on this evidence, Deputy Commissioner Sellers made findings of fact as follows:

> Plaintiff has chronic obstructive pulmonary disease, asthma. A significant portion of her pulmonary obstruction, . . . markedly improves with bronchodilator therapy. Although the cotton dust exposure did, in fact, aggravate symptomatically her asthmatic condition, just as would other nonspecific irritants such as fumes, dust, and pollens, the cotton dust exposure during her employment with [Burlington] was not a significant causal factor in the development of this asthmatic condition. Furthermore, said cotton dust exposure did not affect the underlying nature of her disease or the progression of her disease and did not cause any permanent lung damage. In fact, there was an absence of significant decrement of pulmonary function as measured before and after exposure to cotton dust during pulmonary function testing at intervals from 1971 through 1982.

Sellers concluded that plaintiff had failed to carry her burden of proof that her pulmonary condition resulted from occupational disease, and denied the claim.

On appeal, a divided Commission affirmed. Chairman Stephenson, joined by Commissioner Brooks, found that plaintiff stopped worked only because the Phoenix plant closed down. The majority found that the physicians' testimony conflicted, but that Deputy Commissioner Sellers had weighed the evidence and reached the correct result. The majority adopted as its own Sellers' findings. Commissioner Clay dissented on the ground that the majority had failed in its responsibility by weighing the evidence in the light most favorable to defendants.

From the Commission's order denying compensation, plaintiff appeals.

*Frederick R. Stann for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, by J. A. Gardner, III, for defendant-appellees Burlington Industries and American Motorists Insurance Company, and Golding, Crews, Meekins & Gordon, by Michael K. Gordon, for defendant-appellees Burlington Industries and Liberty Mutual Insurance Company.*

EAGLES, Judge.

On appeal from a final order of the Industrial Commission, this Court has only a limited role. Where the Commission acts under a misapprehension of law in its fact finding function, we may remand so that the facts may be reconsidered in their true legal light. *Clark v. Burlington Industries, Inc.,* 78 N.C. App. 695, 338 S.E. 2d 553, *cert. denied,* 316 N.C. 375, 342 S.E. 2d 892 (1986). We also may remand for evidentiary or other procedural error clearly prejudicial to one of the parties. *E.g. Citizens Bank & Trust Co. v. Reid Motor Co.,* 216 N.C. 432, 5 S.E. 2d 318 (1939) (error to rely on testimony where witness refused to submit to cross examination).

[1] With respect to considering the evidence, however, the Commission has sole authority to make findings of fact. *Yelverton v. Kemp Furniture Co.,* 51 N.C. App. 675, 277 S.E. 2d 441 (1981). This Court does not weigh the evidence. *Porterfield v. RPC Corp.,* 47 N.C. App. 140, 266 S.E. 2d 760 (1980). We determine only whether there is *any* evidence of substance in the record to sup-

port the Commission's findings; if there is, we are bound by the findings, even though the record may contain evidence supporting findings *contra. Id.* There must be a complete lack of competent supporting evidence to justify disregarding the Commission's findings of fact. *See Mayo v. City of Washington*, 51 N.C. App. 402, 276 S.E. 2d 747 (1981). Where medical testimony is conflicting, the Commission decides which testimony to give the greater weight. *See Register v. Administrative Office of the Courts*, 70 N.C. App. 763, 321 S.E. 2d 24 (1984); *Caulder v. Waverly Mills*, 67 N.C. App. 739, 314 S.E. 2d 4 (1984), *aff'd*, 314 N.C. 70, 331 S.E. 2d 646 (1985). The Commission is under no duty to view the evidence in the light most favorable to the claimant. *Cauble v. Macke Co.*, 78 N.C. App. 793, 338 S.E. 2d 320 (1986). Only this Court applies that standard, and then only in the course of reviewing an award allowing, not denying, compensation. *Id.; see Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 265 S.E. 2d 389 (1980).

[2] In our limited role as a reviewing court we must conclude that the Commission's findings are supported by some competent evidence, and hence are binding on this Court. Dr. Harris testified positively that plaintiff suffered from asthma with only a possibility of byssinosis, and that she had suffered no permanent impairment consistent with byssinosis. Dr. Harris had examined plaintiff on three occasions both before and after the end of her employment. His testimony sufficed to support the result reached by the Commission. In *Thompson v. Burlington Industries*, 59 N.C. App. 539, 297 S.E. 2d 122 (1982), *cert. denied*, 307 N.C. 582, 299 S.E. 2d 650 (1983), we affirmed a similar order. Plaintiff had many symptoms typically associated with byssinosis, including shortness of breath, fatigue, and sputum production, and had worked in very dusty environments for at least 11 years. The Commission found that she had asthma, exacerbated by exposure to dust, but no permanent functional impairment. The Commission denied compensation and we affirmed: "Since plaintiff suffered from asthma, an ordinary disease of life, and did not retain any permanent functional pulmonary impairment after she quit her job, she did not have an occupational disease." 59 N.C. App. at 542, 297 S.E. 2d at 124.

Accordingly we must accept the Commission's findings of fact. We are bound to do so though we recognize the policy inherent in the Workers' Compensation Act favoring liberal treat-

ment of employee claims and disfavoring denying claims on technical grounds.

[3]   Plaintiff raises several procedural assignments of error. She argues that the Commission erred in admitting into evidence the pulmonary function tests. Plaintiff's own Exhibit 2, *introduced by her*, contained the results of the same tests to which she later objected. A party necessarily waives the benefit of an objection when it introduces evidence of the same import in its own behalf. *State v. Tysor*, 307 N.C. 679, 300 S.E. 2d 366 (1983). The fact that defendants later introduced somewhat more detailed evidence of the tests is not of importance; the key portions of the evidence, the results, had already come in. No prejudice occurred. *See State v. Jones*, 287 N.C. 84, 214 S.E. 2d 24 (1975).

[4]   Plaintiff also argues that the Commission erroneously "discounted" Dr. Owens' favorable testimony by failing to make detailed findings relative to it. The Commission's majority *expressly* considered that Deputy Commissioner Sellers had had conflicting medical evidence before her. With the *entire record* before it, the Commission concluded that she had correctly weighed the evidence. This did not amount to "discounting" of Dr. Owens' evidence. The Commission had authority to, and did, give Dr. Harris' testimony greater weight. Failure to make findings summarizing Dr. Owens' testimony was not prejudicial.

Plaintiff also argues that the Commission erred in concluding that she had failed to carry her burden of proof that she suffered an occupational disease. It is well established that the claimant generally carries the burden of proof of entitlement to compensation in proceedings before the Commission. *See e.g. Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E. 2d 682 (1982). While plaintiff did present a *prima facie* case through the testimony of Dr. Owens, the Commission chose to give the conflicting testimony of Dr. Harris greater weight. This was within its power. The Commission's conclusion that plaintiff did not carry her burden simply is a logical extension of this weighing of the evidence, and upon the factual findings as made does not constitute error.

The findings of the Commission were supported by some competent evidence and its conclusion that compensation must be denied follows logically from those findings. Plaintiff has failed to

show any procedural error prejudicially affecting her. The opinion and award of the Commission is therefore

Affirmed.

Judge COZORT concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

It seems clear to me that in its findings of fact the Commission has not properly resolved the issue of plaintiff's disability raised by the medical evidence. While Dr. Harris did testify that plaintiff had symptoms of asthma which were treatable, he also testified that asthma and byssinosis were practically indistinguishable and that plaintiff probably had byssinosis. While much of Dr. Harris' testimony was equivocal, he made one telling unequivocal statement totally ignored by the Commission: "In my opinion, Ms. Carroll is not employable in the cotton textile industry, which was her previous employment. I strongly urge her not to seek such employment."

Dr. Owens' testimony clearly established that plaintiff suffered from work-related chronic obstructive lung disease which rendered her disabled to work. This evidence was altogether ignored.

The Commission's conclusion that plaintiff failed to carry her burden of proof that her pulmonary condition is due to her contracting an occupational disease is simply not supported by the evidence and the Commission has obviously boot-strapped that conclusion by failing to properly find the facts.

In my opinion, this case should be remanded for appropriate findings of fact on the question of whether plaintiff has occupationally related disabling chronic obstructive lung disease.